Frank G. SANTALUCIA, as Parent and Legal Guardian of Frank Santalucia, Jr., an infant, and as Administrator of the Estate of Pamela A. Santalucia, decedent, Plaintiff,

v.

SEBRIGHT TRANSPORTATION, INC., a Michigan Corporation; Sebright Products, Inc. a Michigan Corporation; Brent Sebright Company, a Michigan Corporation; and Steven Lewis Whipple; Defendants.

Brian D. Premo, Esq., Movant,

v.

Mackrell, Rowlands Law Firm, Respondent.

No. 5:99–CV–391.

United States District Court, N.D. New York.

Feb. 1, 2002.

Elmer Robert Keach, III, Esq., Albany, NY, for movant Brian D. Premo, Esq.

Bois, Schiller & Flexner, LLP, (George F. Carpinello, Esq., Of Counsel), Albany, NY, for Respondent.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. BACKGROUND

This matter is on remand from the United States Court of Appeals for the Second Circuit. *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293 (2d Cir.2000). In accordance with the directives from the Second Circuit, an evidentiary hearing was held on October 1, 2001, in Albany, New York. The parties thereafter submitted proposed findings of fact and conclusions of law. The following constitutes the requisite findings of fact and conclusions of law. For additional details about the background of this matter, see *id.* and *Santalucia v. Sebright Transp., Inc.*, No. 99–CV–391, 2000 WL 154727 (N.D.N.Y. Feb. 8, 2000).

## II. EXPERT TESTIMONY

Initially, an evidentiary issue must be resolved. Petitioner Brian D. Premo, Esq. ("Premo") objected to the testimony of expert witnesses Ernest A. DelDuchetto, Esq. ("DelDuchetto") and Richard Pagliara ("Pagliara") proffered by respondent. Decision was reserved.

Expert testimony is appropriate where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. A witness may qualify as an expert by knowledge, skill, experience, training, or education. *Id.* Expert testimony must be relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir.1995). Such testimony must be "based upon sufficient facts or data, ... [be] the product of reliable principles and methods, ... and the witness [must have] applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

■ Factors that may be considered in assessing the reliability and relevance of the expert testimony are whether the theory has been or could be tested, whether it has been subjected to peer review and publication, and whether the theory enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786; *McCullock*, 61 F.3d at 1042. Neither peer review and publication nor general acceptance are dispositive in the reliability assessment. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786. Moreover, extensive practical experience may provide the basis for an expert opinion. *McCullock*, 61 F.3d at 1043. The inquiry must be flexible, focusing "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.

■ The reliability and relevance assessment is applicable to technical and other specialized knowledge, as well as scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999). The *Daubert* factors may be applied in nonscientific cases, but the "specific factors do not necessarily nor exclusively appl[y] to all experts in every case." *Id.* Flexibility in the analysis remains key. *See id.* at 141–142, 119 S.Ct. at 1171.

■ The testimony of both experts was proffered for opinions as to the valuation of the case on the date of dissolution, February 15, 1999. DelDuchetto never practiced law in Nevada and never handled a case involving Nevada law. Similarly, Pagliara, an insurance adjuster, has never adjusted a case originating in Nevada and

never worked on a case controlled by Nevada law. Additionally, he did not survey the statistics available through insurance organizations in order to compare the size of jury verdicts or settlement values for Nevada. Rather, he relied upon personal experience in New York and Vermont, and possibly Florida. He also failed to consider any support from the infant's father in performing his evaluation, despite his admission that ordinarily support from the minor's father would be taken into consideration when valuing an action for the wrongful death of the mother. Based upon the foregoing and all the remaining proffered testimony, the testimony of Del-Duchetto and Pagliara is neither relevant nor reliable and would provide no assistance in determining the value of the case on February 15, 1999. Accordingly, the proffered testimony is stricken from the record.

## III. FINDINGS OF FACT

Plaintiff executed a retainer agreement with MacKrell, Rowlands, Premo & Pierro, P.C. ("the Firm") on January 16, 1998. The Firm was to represent plaintiff on behalf of his infant son in an action for the wrongful death of the infant's mother in Nevada. The retainer agreement provided for payment of a one-third contingent share upon settlement or judgment.

At a shareholder meeting held on January 22, 1999, the members of the Firm agreed that the Firm would be dissolved and would cease operations as of February 15, 1999. The Firm did cease operations on February 15, 1999. As of February 15, 1999, the members of the Firm had no written agreement regarding how fees from pending contingent fee cases would be distributed. Additionally, at this time the members of the Firm had no oral agreement regarding how pending contingent fees would be distributed. Finally, there was no meeting of the minds amongst the members of the Firm on February 15, 1999, regarding how fees from pending contingent fee cases would be distributed.

The value of the contingency fee in the case as of February 15, 1999, is the contingency fee on the amount that the case could have been settled for on that date. On February 15, 1999, the defendants were not prepared to settle the instant wrongful death action, as they intended to attempt to reach a global settlement with all the parties who were injured and/or killed in the accident in which plaintiff's decedent was killed. However, at that time, the defendants may have been willing to make a separate settlement of this case. As a result, the settlement offer range was zero to $300,000.00. However, any settlement value amount must be discounted because on February 15, 1999, this case had not been sued. Further, there were no serious negotiations for a separate settlement and no local counsel in Nevada had been retained.

Therefore, on February 15, 1999, the case had a settlement value of $225,000.00. The value of the contingency fee as of February 15, 1999, is one-third of $225,000.00, or $75,000.00.

It is further notable that the settlement value of the case increased dramatically after February 15, 1999. The case was placed in suit. Premo played a lead role in a global settlement conference before the United States Magistrate Judge in Nevada on March 5, 1999. Attorneys for all the injured parties were present, and this was the first serious opportunity for the global settlement the defendants sought. As a result of that conference, a global settlement was achieved. The defendants offered to settle this case for $1 million. The offer was accepted by the father with the approval of the court. It was an extraordinary result for the benefit of the infant plaintiff.

This increased value was due to the skill and efforts of Premo, negotiating on the infant plaintiff's behalf at the magistrate judge's global settlement conference. In other words, the ultimate value of the contingency fee for the $1 million settlement was achieved by Premo after the Firm ceased operations.

## IV. CONCLUSION OF LAW

■ The Firm is entitled to $75,000.00, the value of the contingent fee at the time of dissolution. *See* 232 F.3d at 295.

Accordingly, it is

ORDERED that

1. Between February 11, 2002, and February 25, 2002, Brian D. Premo, Esq. shall pay over to MacKrell, Rowlands, Premo & Pierro, P.C. the sum of Seventy-five Thousand Dollars ($75,000.00) from the interest-bearing escrow account opened in his name at M & T Bank, 80 State Street, Albany, New York, as directed by the Order dated October 12, 1999, plus the proportional share of interest accrued on that amount;

2. After the payment over to MacKrell, Rowlands, Premo & Pierro, P.C. is made as directed, the remaining funds in the M & T Bank escrow account is released from escrow to be paid to Brian D. Premo, Esq.

IT IS SO ORDERED.